# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ANITA G. BOONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:09-CV-250 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Anita G. Boone appeals to this Court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Boone applied for DIB and SSI on October 17, 2003, and September 25, 2003, respectively, alleging that she became disabled as of August 25, 2010. (Tr. 22, 151-53, 517-19.) The Commissioner denied her application initially and upon reconsideration, and Boone's application was denied by Administrative Law Judge ("ALJ") Yvonne K. Stam in a November 16, 2006, decision. (Tr. 22, 482-96.) Boone then filed a Request for Review with the Appeals Council, which remanded the case to the ALJ on March 7, 2007 for further proceedings. (Tr. 8-13.) The Appeals Council instructed the ALJ to obtain additional information concerning

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

Boone's alleged mental impairments.² (Tr. 22.) After the second hearing, the ALJ again denied Boone's claim and she filed a Request for Review with the Appeals Council. (Tr. 8-18, 19-33.) The Appeals Council, however, denied Boone's request, making the ALJ's decision the final decision of the Commissioner. (Tr. 8-18, 19-33.)

Boone filed a complaint with this Court on September 4, 2009, seeking relief from the Commissioner's final decision. (Docket # 1.) On appeal, Boone's only argument is that the ALJ improperly evaluated her credibility. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Br.") 13.)

## II. FACTUAL BACKGROUND

### A. Background

Boone was twenty-seven years old at the time of her alleged onset date. (Tr. 517.) She has a high school education and past relevant work as a cashier, data entry worker, manager, truck driver, warehouse laborer, and a shipping and receiving clerk. (Tr. 32, 162.) Boone alleges that she is disabled due to bipolar II disorder.³ (Br. 2.)

### B. Summary of Relevant Medical Evidence⁴

---

² The remand apparently resulted after Boone submitted mental health treatment records showing a diagnosis of bipolar disorder following the ALJ's first decision. Accordingly, the ALJ conducted a second hearing and considered Boone's alleged mental impairments, along with her alleged physical impairments. On appeal, Boone concedes that the ALJ's findings regarding her physical impairments are supported by substantial evidence and only challenges the ALJ's findings on her mental impairments.

³ "Bipolar disorder is a disease of the nervous system that involves the brain and the body. . . . 'Bipolar' refers to the two psychological states of mania and depression that are associated with the illness. . . . Although many people with this disorder may have mainly manic or mainly depressive episodes, there is usually a mixture of symptoms at any given time. . . ." WES BURGESS, THE BIPOLAR HANDBOOK 1-2 (2000).

⁴ Because Boone does not contest the ALJ's findings with respect to her alleged physical impairments, this Opinion recounts only the portions of the 733-page administrative record that relate to her alleged mental impairments.

On December 1, 2003, Boone was evaluated by Dr. Sherwin Kepes in a consultative psychological exam at the request of the Social Security Administration. (Tr. 399-403.) Dr. Kepes found that she appeared to be in physical discomfort, but she did not appear to be demonstrating significant signs of depression or anxiety. (Tr. 399.) Boone indicated to Dr. Kepes that she believed she was more depressed than the average person because of her life circumstances. (Tr. 399.) Dr. Kepes diagnosed her with dysthymic disorder, pain disorder associated with a general medical condition, and a panic disorder without agoraphobia, mild, and assigned Boone a Global Assessment of Functioning ("GAF") score of 65.[5]

On June 6, 2006, Dottie Fuentes interviewed Boone at the Park Center mental health treatment center. (Tr. 639.) Her mother reported that Boone was angry and on some days did not get out of bed. Boone reported that she had difficulty getting along with others and had severe problems with her father and brother. (Tr. 639.) On mental status exam, Boone was withdrawn, depressed and flat, and blamed others, but her exam was otherwise normal. (Tr. 640.) Ms. Fuentes noted that Boone was somewhat withdrawn and guarded during her interview. She diagnosed Boone with a mood disorder, not otherwise specified; alcohol abuse in early remission; and borderline and histrionic traits and assigned her a GAF score of 45.[6]

Boone was seen by psychiatrist Dr. Paul Lawler on September 5, 2006. (Tr. 637-38.) She told Dr. Lawler that she had held numerous jobs because of her problems with other people,

---

[5] A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS - Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A GAF score of 65 is indicative of someone with some mild symptoms or some difficulty in social, occupational, or school functioning, but who generally functions well and has some meaningful interpersonal relationships.

[6] A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

especially her managers, and that she has few friends. (Tr. 637.) Boone stated that most of the time she is irritable and has trouble focusing and sleeping. (Tr. 637.) She informed Dr. Lawler that she had previously experienced negative side effects from taking Paxil and Wellbutrin. (Tr. 637.) Dr. Lawler diagnosed bipolar disorder II; pain disorder associated with psychological factors; and oppositional-defiant personality and assigned a GAF score of 40-50 depending on her mood. (Tr. 638.) Dr. Lawler prescribed the anti-manic drug Lamictal and began a slow reduction of her Celexa and Abilify prescriptions. (Tr. 638.)

The next day, Boone informed Dr. Lawler that she was experiencing negative side effects with her current medication regime. She reported being unable to sleep and she felt jittery. (Tr. 636.) On September 26, 2006, Boone called Dr. Lawler's office and reported experiencing panic attacks, which consisted of a shortness of breath, extreme anxiety, and fear. (Tr. 636.)

On October 16, 2006, Boone was evaluated by Viann Ellsworth. Boone did not believe that the medication was working and reported that she was still very tired and depressed. (Tr. 635.) She reported frequent mood swings and stated that it was often difficult for her to get out of bed. (Tr. 635.) On mental status exam, her behavior was somewhat withdrawn, her affect blunted, and her thought content showed helplessness and hopelessness. (Tr. 635.) Boone was placed on a higher dose of Celexa and Lamictal. (Tr. 635.)

Boone was seen again on November 16, 2006. Although she reported that she was doing better, her Lamictal prescription was discontinued and replaced with Seroquel because she was experiencing negative side effects. (Tr. 635.) The mental status exam was normal, except that Boone's affect was somewhat blunted. (Tr. 635.) On December 12, 2006, Boone reported additional side effects from the Seroquel and she was advised that the Seroquel might be reacting

4

negatively with the Tylenol PM she regularly took to help fall asleep. (Tr. 634.)

Boone failed to attend her January 16, 2007, appointment and was denied a refill for her medication in March 2007 because of the missed appointment. (Tr. 634.) Boone also cancelled her March 21, 2007, appointment. (Tr. 634.) She was next seen by Ms. Ellsworth on April 13, 2007. (Tr. 631.) She reported that she continued to feel depressed and withdrawn, and her Seroquel prescription was discontinued and Geodon and Cogentin were added. (Tr. 631.) After she began to experience serious side effects from the Geodon and Cogentin, they were discontinued and replaced with Invega and Trazodone. (Tr. 626.) On April 30, 2007, and May 11, 2007, she reported side effects from the Trazodone, but reported that the Invega significantly improved her mood and prevented her mind from racing. (Tr. 626.) She still reported difficulties sleeping. Boone continued to take Invega, while Rozerem was substituted for Trazodone. (Tr. 626.)

Boone next called Ms. Ellsworth on May 31, 2007, and reported that she had been having difficulty sleeping, felt agitated, and could not think clearly. (Tr. 619.) She next saw Ms. Ellsworth on August 13, 2007. (Tr. 619.) Boone reported that she felt very balanced on her current set of medications. (Tr. 619.) Ms. Ellsworth found her behavior was appropriate, her insight and judgment were good, and her mood and affect were within normal range. (Tr. 619.) Boone was instructed to continue her current set of medications and return for a follow up appointment in three months.

*C. Boone's Hearing Testimony*

On November 27, 2007, Boone appeared with counsel and testified before the ALJ in the second hearing. (Tr. 695-733.) Mary Osborne, the claimant's mother; Dr. Patrick Utz, the

5

Medical Expert ("ME"); and Dr. Robert Barkhaus, the Vocational Expert ("VE"), also testified. Boone testified that there had been changes in her mental health since the February 2006 hearing. (Tr. 697.) She testified that she had been diagnosed with bipolar disorder and had been treated with various medications. (Tr. 698.) She stated that she was doing well under her current medication regime, but that she still would be unable to work because of her difficulties in maintaining focus. (Tr. 699-700.) She discussed her treatment at Park Center and maintained that she was still experiencing depression. (Tr. 700-08.)

Boone's mother, with whom she was living, then testified. She stated that her daughter had been depressed all her life and had twice attempted suicide when she was a teenager. (Tr. 712.) Boone's mother also testified that she did not help with the household chores because of her arm pain. (Tr. 713-14.)

The ALJ then questioned the ME, Dr. Utz, who stated that he had reviewed Boone's medical records since the alleged onset date and that they were sufficient to make a judgment about her condition during that time period. (Tr. 715.) He believed that there is evidence of a mood disorder and difficulty coping with stressors and her environment. (Tr. 716.) He did note, however, that her case notes reported that her condition was improving and she was doing well on her current medication. (Tr. 716.) He also testified that the strong side effects she had experienced from some of her medications might be because she didn't actually need that level of medication. (Tr. 716.) The ME concluded that Boone would be able to perform simple to moderate tasks, that she would have minor limitations in working in a team environment, and that she might have some problems with pace because of her difficulties maintaining concentration. (Tr. 719-20.)

Finally, Dr. Barkhaus, the VE, testified and began by considering Boone's past relevant work. (Tr. 724-30.) In response to the hypothetical question from the ALJ, the VE identified approximately 2,000 jobs in the region that Boone could perform if she was limited to simple, unchanging work that did not have any pacing requirements and did not require working as part of a team. (Tr. 731-32.)

## III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[7] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[7] Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On February 28, 2009, the ALJ rendered her second opinion. (Tr. 22-33.) She found at step one of the five-step analysis that Boone had not engaged in substantial gainful activity since her alleged onset date of August 25, 2000. (Tr. 25.) At step two, she determined that Boone had the following severe impairments: cyclothymic disorder, personality disorder, status post right shoulder acromioplasty, and AC joint extension and left shoulder impingement syndrome.[8] (Tr. 25.) At step three, she determined that Boone's impairments were not severe enough to meet a disability listing. (Tr. 25.) The ALJ also found that Boone's disability allegations and testimony were not credible. (Tr. 29-31.) Additionally, the ALJ determined that Boone retained the mental RFC to perform simple and unchanging work tasks that do not require team or group participation or cooperation or involve a fast pace. (Tr. 26.) The ALJ also determined that Boone had the physical RFC to perform light work which can involve lifting and/or carrying ten pounds frequently and twenty pounds occasionally; sitting or standing/walking for about six hours during an eight-hour workday; and performing unlimited pushing and pulling maneuvers with her upper and lower extremities. (Tr. 26.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Boone could not return to her past relevant work. However, the ALJ found that there are a significant number of jobs in the national economy that Boone could perform. (Tr. 32.) She therefore concluded at step five that Boone was not under a disability at any time from the alleged onset date through the date of the decision and her claim for benefits was denied. (Tr. 33.)

---

[8] Cyclothymic disorder is, essentially, a milder form of Bipolar II disorder.

9

*C. The ALJ's Credibility Determination Will Not Be Disturbed.*

Boone's only argument is that the ALJ erred when evaluating the credibility of her symptom testimony. (Br. 13.) The ALJ discredited Boone's symptom testimony because she found that her treatment records did not substantiate the extreme symptoms that she alleged in her hearing. (Tr. 29-30.) Boone now argues that the ALJ erred by neglecting to mention the fact that Boone was given a GAF Score of 45 by Ms. Fuentes and a GAF score in the range of 41-50 by Dr. Lawler. Boone also advances a cursory argument that the ALJ erred because "although the ALJ is correct that she did improve, that does not necessarily mean that she improved to the point where she was able to work." (Br. 14.)

Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435. *See also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . .").

The ALJ specifically took note of Boone's credibility and devoted over one full page to the question. (Tr. 29-31.) She recounted Boone's medical history in depth, discussing her symptoms and diagnosis. (Tr. 29-31.) She also discussed Boone's hearing testimony, noting her

10

complaints of extreme depression, mood swings, fatigue, and crying spells. (Tr. 29.) The ALJ also noted that Boone's mother's testimony corroborated her own allegations.

The ALJ ultimately did not find Boone's testimony credible. She concluded that:

> Contrary to the claimant's testimony, the treatment records from Park Center reflect improvement and do not substantiate the extreme symptoms Ms. Boone testified to. Nor do prior treatment records support the claimant's testimony. Records from Dr. Lowell Palmer dating from June 2001 to June 2002 reflect positive response to medication for depression and anxiety. When the claimant was seen as a new patient by Dr. Dan Mattox in October 2002, she reported having panic attacks of two weeks duration. Paxil was replaced with Celexa, and the following month the claimant reported that she had experienced only one panic attack since taking the new medication. Dr. Mattox's records also show that prior to the time the claimant started treatment at Park Center, her complaints of emotional difficulties [were] sporadic. In November 2003, she complained of intermittent insomnia with complaints of increasing depression in March 2004. In January 2006, the claimant reported that Ambien CR had helped a lot.
>
> The claimant also testified that she had been fired from almost all her jobs due to problems with her attitude and attendance. A review of the claimant's earning record shows that she did indeed work for a number of employers over the years, but also that she maintained employment with certain employers for a significant amount of time. In 2000 the claimant earned $16,793.77 of which $12,350.32 was paid by one employer, Manpower of Portland. In 2001 she was paid $14,042.77 by Manpower of Portland and Manpower International.
>
> The claimant also maintained that she had had many different jobs due to problems with people, especially managers. However, her job performance belies this as the claimant's position as a data entry clerk required her to get along with people as she supervised eight people six hours out of the day as well as training new employees.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

(Tr. 30.)

This thorough discussion, however, does not deter Boone from challenging the ALJ's reasoning. Boone first argues that the treatment records do support her testimony. (Br. 14.) Specifically, she points to the GAF Score of 45 assigned to her as evidence of her serious

11

symptoms and argues that the ALJ erred by neglecting to discuss this evidence. Boone also argues that although the ALJ correctly found that she had improved, this did not mean that she was able to work. (Br. 14.) She argues that her "treatment at Park Center was up and down with many changes in medications" (Br. 14) and that although she reported she was doing okay at her last appointment, she was still having trouble sleeping.

Boone's argument falls short of warranting a remand. The ALJ's decision indicates, and Boone freely admits, that the ALJ considered the opinions of Ms. Fuentes and Dr. Lawler. Although Boone is correct that the decision does not directly refer to the two GAF Scores, the ALJ's failure to do so is not reversible legal error. *Mobley-Butcher v. Astrue*, No. 1:06-cv-934, 2007 WL 3124478, at *11 (S.D. Ind. Sept. 6, 2007) ("Although the ALJ did not specifically mention [the claimant's] GAF scores or discuss every diagnosis, he was not required to do so."). "[A]n ALJ must articulate, at some minimum level, her analysis of the evidence. She is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." *Dixon*, 270 F.3d at 1176 (citing *Zurawski*, 245 F.3d at 888-89); *Clifford*, 227 F.3d at 872.

Here, the ALJ's discussion of Boone's medical history adequately articulates her reasoning at the necessary minimal level. The ALJ devoted five pages to a thorough recounting of Boone's medical history. (Tr. 326-331.) She frequently noted Boone's complaints of depression, sadness, fatigue, and mood swings. She discussed the various medical opinions at length and noted Boone's varying and inconsistent diagnoses of cyclothymia, dysthymic disorder, bipolar II disorder, panic disorder, and pain disorder.

The ALJ also discussed the opinions of Ms. Fuentes and Dr. Lawler in depth. She

discounted Dr. Lawler's opinion because it was based on a single evaluation and he did not follow up with Boone after treatment was initiated. (Tr. 27.) She also found that Dr. Lawler's diagnosis of bipolar II disorder was inconsistent with the less severe diagnoses given by her other doctors. (Tr. 27-28.) The ALJ similarly gave little weight to the opinion of Ms. Fuentes because Boone's subsequent medical history showed large improvements beyond Ms. Fuentes' diagnosis. (Tr. 29-30.)

The simple fact that the ALJ did not specifically mention the two GAF Scores in her decision, especially when the record plainly reveals that the ALJ considered and rejected the opinions of Ms. Fuentes and Dr. Lawler, does not mean that the ALJ's finding was not based on substantial evidence. Contrary to Boone's argument, an ALJ is not required to automatically rely on a claimant's GAF Scores when making her disability determination. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Indeed, "Social Security regulations don't require an ALJ to determine the extent of an individual's disability based solely on a GAF score . . .." *Adams v. Astrue*, No. 1:06-cv-393, 2009 WL 1404675, at *4 (N.D. Ind. May 18, 2009) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (reversed and remanded on other grounds)). *See also Truax v. Barnhart*, No. 1:05-cv-1913, 2006 WL 3240523, at *6 (S.D. Ind. Sept. 29, 2006) ("The fact that [the ALJ] did not mention a few particulars does not provide grounds for remand.") Rather, the ALJ appropriately considered Boone's entire medical history, and apparently gave little weight to the GAF scores assigned by Ms. Fuentes and Dr. Lawler.

Ultimately, Boone's argument appears to simply be that she does not agree with the ALJ's weighing of the evidence. However, Boone's disagreement with the weight given by the ALJ to her GAF scores is not a basis for remand. *See Young v. Barnhart*, 362 F.3d 995, 1001

(7th Cir. 2004); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004); *Powers*, 207 F.3d at 435. The ALJ is in the best position to evaluate the credibility of a witness, and the Court gives special deference to her determination. *Powers,* 207 F.3d at 435. Indeed, the ALJ's reasoning cannot be said to be "patently wrong," *id.*, and the Court will not re-weigh the evidence in the hope that it will come out in Boone's favor this time. *See Flener*, 361 F.3d at 447; SSR 96-7p.

Boone's second argument fares no better than her first. Boone argues that although the ALJ correctly noted that she improved with treatment, that does not mean that she would be able to maintain employment. (Br. 14.) She also claims that although she reported that she was doing okay at her last appointment, she was still having trouble sleeping. (Br. 14-15.)

In her decision, the ALJ carefully traced Boone's medical history and discussed the varying opinions and diagnoses given to her. She specifically evaluated the opinions of Ms. Fuentes and Dr. Lawler and did not assign them persuasive weight—a fact that Boone does not challenge. The ALJ also highlighted the fact that Boone had past success in holding employment for a "significant amount of time," which cut against her claim of being completely unable to work. (Tr. 30.) Indeed, the ALJ did not base her credibility decision solely on the two pieces of evidence highlighted by Boone in her appeal. Rather, the ALJ combined this evidence with an extensive examination of Boone's medical history, her conflicting diagnoses, and occasional failure to follow up with treatment and found her testimony to not be credible. (Tr. 29-31.)

As before, Boone's argument again appears to simply be that she disagrees with the weight given by the ALJ to the medical evidence. However, because the ALJ's decision is

grounded in the record and she articulated her analysis of the evidence "at least at a minimum level," *Ray*, 843 F.2d at 1002, her decision will not be disturbed. *See Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (stating that an ALJ is entitled to make reasonable inferences from the evidence of record). The ALJ drew "an accurate and logical bridge," *Ribaudo*, 458 F.3d at 584; *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), between the substantial evidence in Boone's medical history that her condition was not as debilitating as she claimed and improved with treatment, in finding that Boone's testimony of a total inability to work was not entirely credible. (*See* Tr. 26-31.) The ALJ's conclusions are not "patently wrong," *Powers*, 207 F.3d at 435, and the Court will not entertain Boone's request to reconsider the evidence in the hope that it will be viewed in her favor.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter judgment in favor of the Commissioner and against Boone.

SO ORDERED.

Enter for July 22, 2010.

                S/Roger B. Cosbey
                Roger B. Cosbey,
                United States Magistrate Judge